EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JAMES R. LIDDELL, JR.<br>Plaintiff | )<br>)<br>)<br>) |
| v. | ) CIVIL ACTION NO. 04CV10409WGY |
| CITY OF ATTLEBORO<br>Defendant | )<br>)<br>)<br>) |

## PLAINTIFF JAMES R. LIDDELL, JR.'S RESPONSES TO DEFENDANT CITY OF ATTLEBORO'S FIRST SET OF INTERROGATORIES TO PLAINTIFF

COMES now James R. Liddell, Jr., plaintiff in the above-captioned matter (hereinafter "Plaintiff"), as represented by counsel, and, pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, and Rule 33.1 of the United States District Court Local Rules, hereby responds to the first set of interrogatories proffered by the defendant City of Attleboro (hereinafter "Defendant"). The responses below represent Plaintiff's present knowledge and the results of his investigation to date and are to the best of his recollection, information, and belief. Plaintiff reserves the right to amend and supplement his responses set forth below as may be necessary or appropriate in the future.

I.  DEFINITIONS AND GENERAL OBJECTIONS

1.  Plaintiff objects to interrogatories numbered 1 to 25, and their subparts, to the extent that they seek information a) prepared in anticipation of litigation or for trial, b) subject to the attorney-client or work product privilege, c) not reasonably calculated to lead to the discovery of admissible evidence in support of Defendant's case, d) consist of

compound questions and otherwise exceed the number of document requests permitted pursuant to Federal Rules of Civil Procedure and Local Rules of the District Court, and

e) otherwise not discoverable under the Federal Rules of Civil Procedure and/or federal and Massachusetts laws.

2. As used herein, "vague and ambiguous" means the request is drafted in a way that does not clearly convey what information is requested. Plaintiff is not required to guess Defendant's intended meaning.

3. As used herein, "burdensome and oppressive" means the request requires searching for information with little value or benefit to the parties herein such that the value of producing the information is far outweighed by the burden of producing it. This is especially true where the Defendant can or already has obtained the information from other sources.

4. As used herein, "overly broad" means the request requires, at least in part, information which is irrelevant in subject matter and/or time period. Defendant is required to draft requests clearly and narrowly so that only relevant information is required.

5. Plaintiff bases his responses to Defendant's requests on the assumption that Defendant did not intend to seek information protected by the attorney/client privilege, the attorney work product rules, the right of privacy and other constitutional protections, applicable accountant/client privilege, or the confidentiality of the impressions, conclusions, opinions, legal research, or theories of Plaintiff's attorney or representatives or agents of the attorney of Plaintiff. To the extent that Defendant's requests are intended to elicit such information, Plaintiff objects and asserts the foregoing privileges and protections to the fullest extent provided by law.

6. By making these responses, Plaintiff does not conclude that the information produced is properly discoverable or admissible, and Plaintiff reserves the right to object to additional discovery with respect to the subject matter and to object to the introduction of these responses into evidence. Each response is subject to all objections as to competence, relevance, materiality, propriety, and admissibility, and any and all other objections and grounds that would require the exclusion of any statement if requests were asked of, or any statements contained herein, were made by a witness present and testifying in court, all of which objections and grounds are reserved and may be interposed at the time of hearing.

7. A response made in spite of the stated objection may not be construed as a waiver of the stated objection (assent), and such a response is made in an effort to provide responsive information based on a fair reading of a request's intended meaning. In addition, Plaintiff's discovery and investigation herein are ongoing, and Plaintiff's responses are based upon current information. Plaintiff reserves the right to present further or different evidence at the time of trial.

8. The inclusion of any inadvertent attorney-client work product or communication is not meant in any way to be an expressed or implied waiver of the attorney-client privilege.

9. A specific response that Plaintiff will produce certain documents is not a representation that such documents exist.

10. The definitions contained herein shall not be taken to amend or modify the Federal Rules of Civil Procedure, but are instead intended to be incorporated into each of the requests to which they relate as if the language herein was stated in those requests.

11. The terms "Plaintiff" and "Mr. Liddell" are used interchangeably and refer to the Plaintiff in the above-entitled action; that is, James R. Liddell, Jr.

12. The terms "Defendant" and "Attleboro" are used interchangeably and refer to the Defendant in the above-entitled action; that is, the City of Attleboro, and refer to any subsidiary, parent, affiliate, employee, director, officer, agent or any person or entity acting or purporting to act on its behalf or under its direction or control, including attorneys.

13. The term "employee" includes any person, including all executives, officers, board members, managers, supervisors and professionals, who are or have been employed on a full- or part-time basis by the Defendant unless otherwise indicated.

14. The term "Complaint" shall mean the herein civil action filed by Mr. Liddell and any other amended complaints that Plaintiff has or may file in the above-entitled matter.

15. The term "MCAD Complaint" refers to the administrative complaint filed by Mr. Liddell at the Commonwealth of Massachusetts's Commission Against Discrimination on or about May 9, 2002.

II. PLAINTIFF'S RESPONSES AND OBJECTIONS TO DEFENDANT'S SPECIFIC DOCUMENT REQUESTS

INTERROGATORY NO. 1: State each and every fact upon which you rely in claiming that you are a handicapped individual, and, in doing so, please state the exact nature of your disability (or disabilities), which life functions said disability (or disabilities) interferes with and the nature and extent of said interference.

OBJECTIONS: Plaintiff objects to the above interrogatory on the grounds that it is overly broad, burdensome and oppressive, and vague and ambiguous; seeks information that is confidential, private, and privileged pursuant to HIPPA, M.G.L. c. 214, §1B, M.G.L. c. 112, §§135A &B; requires Plaintiff to state a legal conclusion; seeks mental impressions

4

and opinions of Plaintiff's counsel; seeks information that is not currently in the possession, custody or control of Plaintiff; seeks information that is protected by attorney-client privilege and/or the work product doctrine; and is not reasonably calculated to lead to the discovery of admissible evidence.

ANSWER: Subject to the foregoing objections, and without waiving same, Plaintiff responds as follows:

a.  Physical Disabilities: Plaintiff sustained a work-related head injury, on or about February 25, 1997, while working under the employ of Defendant. Vestibular function testing was abnormal, based on an Ontoneurology evaluation conducted at Braintree Rehabilitation Hospital, on September 11, 1997. Plaintiff was diagnosed with labyrinthine concussion and tinnitus. Plaintiff's symptoms arising therefrom include, but are not necessarily limited to, headaches, and positional dizziness and vertigo. The disability substantially limits Plaintiff's major life activities, such as his ability to perform manual tasks like bending, stooping, climbing ladders and maintaining his balance thereon; sleeping (sleeps with a fan to create background noise) and working. In addition, Plaintiff has been diagnosed with gastroesphageal reflux disease and diminished hearing.

b.  Mental Disabilities: Plaintiff has been diagnosed and treated therapeutically and with medication for depression and anxiety. This disability substantially affects Plaintiff's major life activities, including, but not necessarily limited to, his ability to work and interact with others.

INTERROGATORY NO. 2: State the prescribed medications you have taken from January, 1995 to the present, and, in so doing, please specify the dates you took said medication, and the purpose for taking the medication.

OBJECTIONS: Plaintiff objects to the above interrogatory on the grounds that it is overly broad, burdensome and oppressive; seeks information that is confidential, private, and privileged pursuant to HIPPA, M.G.L. c. 214, §1B; seeks information that is not currently in the possession, custody or control of Plaintiff; and is not reasonably calculated to lead to the discovery of admissible evidence.

ANSWER: Subject to the foregoing objections, and without waiving same, Plaintiff responds as follows:

- Paxil, 20 mg., for anxiety and depression, Dr. Christopher Sanders, 1995 to present.

- Keflex, 200 mg., for finger infection, Dr. Sanders, March 1, 1996.

- Antivert, 12 mg., for dizziness, April 16, 1997.

- Prevacid, 30 mg., for acid relex, Dr. Christopher Sanders, from 1998 to present.

- Minocin, 100 mg., for rash on arm, Dr. Sanders, September 1999.

- Benadryl, 25 mg., for dizziness, Dr. Sanders, September 1999.

- Naprosyn, 500 mg., Dr. Sanders, February 2002.

- Flexeril, 10 mg., for back spasms, Dr. Sanders, February 2002.

- Domperidone, 10 mg., for stomach, Dr. David N. Schwartz, October 31, 2000.

- Prilosex, 20 mg., May 4, 1998, Dr. David N. Schwartz, (for eight days).

INTERROGATORY NO. 3: Identify each and every conversation and\or communication you had with Superintendent Pacy, Lovering, Parenteau, Manny Rodriguez ("Rodriguez"), and\or any other administrator or other employee at Attleboro or employee at Sedexho regarding your alleged disability (or disabilities). In answering this interrogatory please specify the following:

    a. date(s) of conversation/communication;
    b. person(s) included in conversation(s)/communication;
    c. substance of conversation(s)/communication;
    d. location of conversation(s)/communication;
    e. means of communication (i.e. phone, letter), (sic) and
    f. each and every document that supports your answer.

OBJECTIONS: Plaintiff objects to the above interrogatory on the grounds that it is overly broad, burdensome and oppressive; seeks information that is not currently in the possession, custody or control of Plaintiff; requires Plaintiff to state a legal conclusion; and is not reasonably calculated to lead to the discovery of admissible evidence.

ANSWER: Subject to the foregoing objections, and without waiving same, Plaintiff's conversations/communications included, but were not necessarily limited to, the following persons:

a.    <u>Superintendent Ronald Pacy:</u> By letter dated March 1, 2002, Plaintiff requested a two-week leave of absence from Superintendent Pacy in order to deal with some family issues due the recent death of Plaintiff's mother. Later, Plaintiff received a letter from Superintendent Pacy, dated March 21, 2002, in which the latter informed Plaintiff that he was considered "permanently and voluntarily separated" from the employ of the Attleboro Public Schools. On April 3, 2002, Plaintiff attended a termination hearing at Superintendent Pacy's office, along with his supervisor (Jason Parenteau), Joel Lovering and Robert Moelk (representative from Plaintiff's union). By way of letter, dated April

7

12, 2002, Superintendent Pacy informed Plaintiff that he upheld his decision to terminate Plaintiff. To the extent that Superintendent Pacy and other administrators and employees of Defendant had access to Plaintiff's personnel file, such individuals had notice that Plaintiff, in 1997, Dr. Jules Friedman, of Braintree Hospital Rehabilitation Network, treated Plaintiff for symptoms resulting from a work-related inner ear injury. Such symptoms, according to Dr. Friedman, restricted his ability to work at extreme heights or around open or dangerous machinery.

b.   Joel Lovering: Plaintiff on several occasions would "run into" Mr. Lovering in the Coelho Middle School hallways or in his office. Mr. Lovering would ask Plaintiff about his absences from work and Plaintiff would verbally inform him that he medical problems.

c.   Joseph Pardee: Plaintiff informed Mr. Pardee, his former Marriott supervisor, of his medical problems when the two conversed by telephone conversations and in-person at the Coelho Middle School.

d.   James Rose: As Vice Principal of Coelho Middle School, Mr. Rose was advised by Plaintiff of the latter's condition, including Plaintiff's medical problems and bouts of depression, as well the medical and emotional problems that afflicted his daughter, Cristine Liddell ("Cristine"). Plaintiff spoke with Mr. Rose periodically about these matters.

e.   Ruth Boivin: On several occasions, Plaintiff spoke with School Nurse Boivin about the difficulties he was having with his physical and mental health.

f.  <u>Ron Boivin:</u> Plaintiff, on several occasions, spoke to Mr. Boivin (plumber/supervisor of maintenance for Defendant) about difficulties he was having with his physical and mental health.

g.  <u>Karen Carpenter:</u> Ms. Carpenter, a Coelho Middle School Secretary, was well aware of Plaintiff's 1997 injury and medical problems.

h.  <u>Barbara Sheer:</u> On several occasions, Plaintiff verbally told Ms. Sheer, a Coelho Middle School Teacher, the reasons for his absences.

i.  <u>Jason Parenteau:</u> Plaintiff had multiple conversations with his immediate supervisor, Mr. Parenteau, about his medical and emotional problems as well as the stress he was under as a result of problems within his immediate family. These conversations occurred at the Coelho Middle School and by telephone. Mr. Parenteau was told by Plaintiff that he was depressed and seeing a counselor. When Plaintiff asked about the procedure for obtaining a leave of absence, Mr. Parenteau, on or about February 27, 2002, suggested that he put his request in writing to Superintendent Pacy, which he did. Further, Mr. Parenteau expressly told Plaintiff that if there were a problem with the request, then he would contact him. Since Plaintiff did not hear back from Mr. Parenteau or anyone else, he began his leave of absence. On or about March 15, 2002, Plaintiff left a telephone message with Mr. Parenteau requesting additional week of leave. Prior to Plaintiff's termination hearing on April 3, 2002, Mr. Parenteau told Plaintiff that most likely Defendant would rehire Plaintiff.

j.  <u>Manny Rodriguez:</u> On March 18, 2002, or thereabout, in the early morning before the start of Plaintiff's shift, Plaintiff went to the Coelho Middle School to determine whether Defendant granted his request for a second leave. When he arrived, he spoke to

Mr. Rodriguez, a custodian at the Coelho Middle School. According to Mr. Rodriquez, Mr. Parenteau stated to him that Plaintiff was given a third week off.

k.  <u>Jeff Brousseau:</u> Mr. Brousseau, an Attleboro Maintenance Department employee, was in Mr. Parenteau's office when Plaintiff telephoned Mr. Parenteau on or about February 27, 2002. Mr. Brousseau overheard Mr. Parenteau tell Plaintiff to write "as soon as possible" a letter to request a leave of absence and that Mr. Parenteau would call him if there was any problem."

<u>See</u> <u>generally</u> documents produced by predecessor counsel in connection with MCAD Complaint; <u>see</u> <u>also</u> Plaintiff James R. Liddell, Jr.'s Initial Disclosures pursuant to Fed.R.Civ.P. 26(a); Plaintiff's May 28, 2003 deposition transcript; and Plaintiff's answers to Interrogatory Nos. 4, 10.

<u>INTERROGATORY NO. 4:</u> State each and every incident, occurrence and\or event which you claim occurred and supports your claims against the Defendant based on handicap discrimination and\or the Family Medical Leave Act (the "FMLA"). For each incident, occurrence, and\or event, identify the time, the date, and a detailed description of the incident, occurrence and\or event.

<u>OBJECTIONS:</u> Plaintiff objects to the above interrogatory on the grounds that it is overly broad, burdensome and oppressive; seeks information that is not currently in the possession, custody or control of Plaintiff; requires Plaintiff to state a legal conclusion; seeks information that is protected by attorney-client privilege and/or work product doctrine; seeks to discover the mental impressions and opinions of Plaintiff's counsel; and is not reasonably calculated to lead to the discovery of admissible evidence.

ANSWER: Subject to the foregoing objections, and without waiving same, Plaintiff states that with regard to his physical disabilities, Defendant, on unspecified dates, forced him to do tasks that he was medically prohibited from doing, such as manual tasks that required bending and climbing (e.g., climbing ladders to check the exhaust fans and cleaning the uni-vents). Plaintiff further states that at times material herein, Defendant was aware of his physical disabilities, which resulted from his work-related injury in February 1997. In addition, Plaintiff states that Defendant and its employees, agents, and/or assigns were notified by Plaintiff - prior to Plaintiff requesting his first leave of absence on March 1, 2002 - that Plaintiff was personally experiencing emotional problems (depression) as well as having problems within his immediate family members (e.g., mother's illness and death; daughter Cristine's serious mental health problems while attending the Attleboro Public Schools). In answering further, Plaintiff states that despite Defendant having such knowledge, and because it regarded him at all times material herein as being impaired, Defendant and its employees, agents, and/or assigns, nevertheless treated Plaintiff as a chronic sick leave abuser. Further answering, Plaintiff states that Defendant refused, failed, or neglected to participate in an interactive process with Plaintiff to identify and determine what, if any, reasonable accommodation(s) can be provided, including, but not necessarily limited to, granting Plaintiff a temporary leave of absence in March 2002 or providing Plaintiff with light duty assignments to accommodate his physical impairments. In answering further, Plaintiff states that Defendant and its employees, agents, and/or assigns at all times material herein failed to notify Plaintiff of his rights under the FMLA and/or the state's anti-discrimination law under M.G.L. c. 151B. See also Complaint; answers to Interrogatory Nos. 1-3, 6-15, 17-

18, 21-22; discovery produced by prior counsel in connection with the MCAD Complaint; Plaintiff's May 28, 2003 deposition transcript.

INTERROGATORY NO. 5: State each and every reason you requested a leave of absence ("LOA") from your job in March, 2002.

OBJECTIONS: Plaintiff objects to the above interrogatory on the grounds that it is overly broad, burdensome and oppressive and vague and ambiguous; requires Plaintiff to state a legal conclusion; and is not reasonably calculated to lead to the discovery of admissible evidence.

ANSWER: Subject to the foregoing objections, and without waiving same, Plaintiff states that he sought a leave of absence due to the emotional and physical distress that he suffering from as a result of the death of his mother, and the stress he was experiencing in dealing with his daughter Cristine's mental health problems, and the stress that he was under from his siblings. See also Plaintiff's objections and answer to Interrogatory No. 4.

INTERROGATORY NO. 6: Identify each and every conversation and\or communication you had with Superintendent Pacy, Lovering, Parenteau, Rodriguez and\or any other administrator or other employee at Attleboro or employee at Sedexho regarding the LOA you requested during March, 2002 and\or any extensions or requested extensions of the LOA. In answering this interrogatory please specify the following:

    a.    date(s) of conversation\communication;
    b.    person(s) included in conversation(s) (sic) communication;
    c.    substance of conversation(s)/communication;
    d.    location of conversation(s)/communication;
    e.    means of communication (i.e. phone, letter); and
    f.    each and every document that supports your answer.

OBJECTIONS: Plaintiff objects to the above interrogatory on the grounds that it is overly broad, burdensome and oppressive; seeks information that is not currently in the

possession, custody or control of Plaintiff; and is not reasonably calculated to lead to the discovery of admissible evidence.

ANSWER: See Plaintiff's answer to Interrogatory Nos. 3, 4, 9, 10, and 18; see also discovery produced by prior counsel in connection with MCAD Complaint; Plaintiff's May 28, 2003 deposition transcript; and Plaintiff James R. Liddell, Jr.'s Initial Disclosures pursuant to Fed.R.Civ.P. 26(a).

INTERROGATORY NO. 7: Identify each and every physician, medical professional, psychiatrist, psychologist, social worker, therapist, hospital, clinic, HMO and/or similar professional/entity which has provided medical, therapeutic, psychiatric and/or psychological services/care to Plaintiff from January 1995 to present.

OBJECTIONS: Plaintiff objects to the above interrogatory on the grounds that it is overly broad, burdensome and oppressive and vague and ambiguous; seeks information not in Plaintiff's possession, custody or control; and is not reasonably calculated to lead to the discovery of admissible evidence.

ANSWER: Subject to the foregoing objections, and without waiving same, Plaintiff

    a.    Sturdy Memorial Hospital, Inc.;

    b.    Braintree Hospital;

    c.    Dr. Christopher Sanders (primary physician);

    d.    Dr. Pamela D. Dana (ears, nose and throat);

    e.    Dr. Jules Friedman (specialist at Braintree Hospital; treated Plaintiff for vestibular injury resulting from work-related accident in February 1997);

    f.    Dr. David N. Schwartz (Attleboro Gastroenterology, P.C.);

    g.    Alice Griffin, LICSW;

  h.  Dr. Ranbir Dhillon (neurologist); and

  i.  Dr. Dehm (optomologist).

INTERROGATORY NO. 8: For each individual and/or entity identified in Interrogatory #7, provide the date(s) on which Plaintiff had such care/services provided and the reason for such care/service.

OBJECTIONS: Plaintiff objects to the above interrogatory on the grounds that it is overly broad, burdensome and oppressive and vague and ambiguous; seeks information not in Plaintiff's possession, custody or control; seeks information protected by the attorney client privilege and/or work product doctrine; is not reasonably calculated to lead to the discovery of admissible evidence.

ANSWER: Subject to the foregoing objections, and without waiving same, Plaintiff states the following:

  a.  Sturdy Memorial Hospital, Inc. (for dates, see records produced by predecessor counsel in response to MCAD Complaint discovery requests);

  b.  Braintree Hospital – did testing and rehabilitation for Plaintiff's head injury (July 1997 to September 1997);

  c.  Dr. Christopher Sanders (primary physician, 1994 to present);

  d.  Dr. Pamela D. Dana (ears, nose and throat; diagnosed Tinnitus and loss of hearing; March 1997);

  e.  Dr. Jules Friedman (specialist at Braintree Hospital; from July 1997 to September 1997, treated Plaintiff for vestibular injury resulting from work-related accident in February 1997);

    f.    Dr. David N. Schwartz (Attleboro Gastroenterology, P.C.; May 4, 1998 to May 3, 2002);

    g.    Alice Griffin, LICSW (in treatment from 1/28/02 to 11/20/02);

    h.    Dr. Ranbir Dhillon (neurologist, March 31, 2000); and

    i.    Dr. Dehm (glaucoma; last treated in 2002).

INTERROGATORY NO. 9: State each and every statement made by Liddell, Superintendent Pacy, Lovering, Parenteau and\or any other individual during the hearing that was held on or about April 3, 2002.

OBJECTIONS: Plaintiff objects to the above interrogatory on the grounds that it is overly broad, burdensome and oppressive and vague and ambiguous; seeks information not in Plaintiff's possession, custody or control; and is not reasonably calculated to lead to the discovery of admissible evidence.

ANSWER: Subject to the foregoing objections, and without waiving same, Plaintiff attempted to tell Superintendent Pacy why he needed the three weeks of leave off, but was not given the chance to give a full explanation. Instead, Superintendent Pacy focused more on Plaintiff's past attendance record, rather than on the reasons why Plaintiff needed a leave, as stated in his March 1, 2002 letter. Plaintiff further recalls that Superintendent Pacy intimidated him at the onset of the hearing by raising his voice and telling Plaintiff to speak up. Plaintiff further recalls stating to Dr. Pacy that he had followed Mr. Parenteau's previous advice on requesting a leave of absence. Plaintiff also recalls stating to Mr. Lovering that "this is just another way of getting rid of a civil service person," which Mr. Lovering denied. Plaintiff also recalls stating that it was unfair that Defendant would retain Tom Godfrey, a maintenance worker accused of rape

15

(which Plaintiff believes he was later convicted of), but not him. See also Plaintiff's answers to Interrogatory Nos. 3 and 4, and interrogatories cross-referenced therein; and Plaintiff's May 28, 2003 deposition transcript, which may contain information potentially responsive to this interrogatory.

INTERROGATORY NO. 10: State each and every fact that you rely upon in making the allegation in paragraph 10 of the Complaint that "Defendant, by or through its agents, was aware of these serious health issues concerning Plaintiff and his immediate family.

OBJECTIONS: Plaintiff objects to the above interrogatory on the grounds that it is overly broad, burdensome and oppressive and vague and ambiguous; and seeks information not in Plaintiff's possession, custody or control.

ANSWER: Subject to the foregoing objections, and without waiving same, Plaintiff states that Defendant and its various employees, agents, and assigns were, at all times material herein, aware of health issues concerning Plaintiff and his immediate family (mother and Cristine). Such notice was provided through letters and verbal discussions involving Plaintiff and his wife and the following individuals: Mr. Lovering (Superintendent; approved Cristine's transfer to Coelho Middle School from Wamsutta Middle School), Mr. Pardee, Mr. Rose, Mr. Parenteau (Plaintiff informed him of his medical and mental health problems as well as problems within immediate family; Parenteau granted Plaintiff time off each week to take Cristine to psychiatrist visits), Dr. Alan Dyl (Defendant's School Psychologist, Attleboro Public Schools), Sue Casey, Ruth Boivin (School Nurse at Coelho Middle School), Ron Boivin, Mimi Forbes (Principal of Coelho Middle School), Kathleen Mulvaney (Principal of Wamsutta Middle School); Stacy Aguiar (former Wamsutta Middle School nurse), Tammy Ramos (Wamsutta